UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALVIN CHAMPAGNE, | ) | 1:09-CV-00101 OWW JMD (HC) |
| Petitioner, | ) | |
| v. | ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| PAM AHLIN, Executive Director of Coalinga State Hospital, | ) ) ) | |
| Respondent. | ) | |

Petitioner is a state civil committee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

On January 15, 2009, Petitioner filed a petition for writ of habeas corpus seeking to be released from civil commitment ordered by the Tulare County Superior Court. (Doc. #1.)

Respondent filed an answer to Petitioner's petition on June 1, 2009. (Doc. #12.)

Petitioner filed a traverse to the answer on August 7, 2009. (Doc. #17.)

**FACTUAL BACKGROUND**[1]

On June 2, 2006, the district attorney filed a petition to extend Champagne's civil commitment as a sexually violent predator (SVP) under the Sexually Violent

---

[1] The facts are derived from the factual summary set forth by the California Court of Appeal, Fifth Appellate District, in its opinion of August 12, 2008, and are presumed correct pursuant to 28 U.S.C. §§ 2254(d)(2), (e)(1). See People v.Champagne, No. F053242, 2008 WL 3319840, at *1 (Cal. Ct. App. August 12, 2008); (Pet., Ex. B, Opinion of Cal. Ct. App., 2-3, Aug. 12, 2008; Lodged Doc. #1, 37-38).

Predator Act (SVPA). (Welf. & Inst.Code, §§ 6600 et seq.)[2] The petition noted he had been found to be an SVP and had been committed to the custody of the State Department of Mental Health (DMH) on June 18, 2004. The length of the term of commitment the SVPA authorized on both of those dates was two years. (Former § 6604. Added by Stats.1995, ch. 763, § 3. Amended by Stats.2000, ch. 420, § 3, eff. Sept. 13, 2000.)

On September 20, 2006, a legislative amendment to the SVPA took effect that changed the length of the term of commitment of an SVP from "two years" to "an indeterminate term." (Former § 6604. Amended by Stats.2006, ch. 337, § 55, eff. Sept. 20, 2006.) Seven weeks later, a ballot initiative effected, inter alia, a like change in the SVPA. (§ 6604. Initiative Measure (Prop. 83, § 27, approved Nov. 7, 2006, eff. Nov. 8, 2006) (Proposition 83).)

On May 10, 2007, the district attorney filed a motion to convert without trial Champagne's commitment for two years to a commitment for an indeterminate term on the theory that the amended statute obviated the need for a trial. On May 21, 2007, at a consolidated hearing on the district attorney's motion, Champagne's opposition, and Champagne's motion to dismiss (which argued the opposing theory that the amended statute rescinded the former statutory authority to petition for an extension), the trial court denied both motions.

On May 24, 2007, a jury found the petition true and the trial court ordered him committed to DMH custody for an indeterminate term.

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the deprivation in question arose out of the Tulare County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

### II. Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (1997)) (holding AEDPA only applicable to cases filed after statute's

---

[2] Later statutory references are to the Welfare and Institutions Code unless otherwise noted.

enactment); See also Bobby v. Van Hook, __ U.S. __, 130 S.Ct. 13, 16 (2009); Pinholster v. Ayers, 509 F.3d 651, 662 (9th Cir. 2009). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of AEDPA. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413 (contrary to or an unreasonable application of clearly established federal law); Wood v. Allen, __ U.S. __, 130 S.Ct. 841, 849 (2010) (unreasonable determination of fact).

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Woodford v. Visciotti, 537 U.S. 19, 25 (2002); Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. see Arredondo v. Ortiz, 365 F.3d 778, 788 (9th Cir. 2004) (citing Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003)).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002); See Miller-El v. Dretke, 545 U.S. 231, 240 (2005).

Thus, the initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). The Ninth Circuit has further stated that where it is undisputed that federal review is not barred by a state procedural ruling, "the question of which state court decision last 'explained' the reasons for judgement is therefore relevant only for purposes of determining whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly

established federal law." Bailey v. Rae, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Thus, a federal habeas court looks through ambiguous or unexplained State court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. Id.

Here, the Tulare County Superior Court, the California Court of Appeal, and the California Supreme Court all adjudicated Petitioner's claims. As the California Supreme Court issued a summary denial of Petitioner's claims, the Court "look[s] through" those courts' decisions to the last reasoned decision; namely, that of the California Court of Appeal, Fifth Appellate District. See Ylst v. Nunnemaker, 501 U.S. at 804.

### III.  Review of Petitioner's Claims

Ground One

Petitioner appears to claim that the trial court violated California law when it "retroactively appl[ied] the revision of the SVPA" to his commitment. Petitioner argues that "[t]he issue of whether a change in the law should be applied retroactively is solely a question of statutory interpretation. This question is separate and distinct from whether the changes violate the Ex Post Facto Clauses of the Federal and State Constitutions." (Pet., 6.)

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991); Pulley v. Harris, 465 U.S. 37, 41 (1984). To the extent that Petitioner seeks habeas relief on the basis that trial court violated the State constitution by retroactively applying revisions to the SVPA in order to hold him in civil commitment indefinitely, he fails to state a basis for federal habeas relief because "alleged errors in the application of state law are not cognizable" in the federal habeas court. Moor v. Palmer, __ F.3d __, 2010 WL 1712489, at *2 (9th Cir. Apr. 29, 2010) (quoting Langford v. Day, 110 F.3d 1380, 1389 (9th. Cir. 1996)); see also Pulley, 465 U.S. at 41 (holding that "a federal court may not issue the writ on the basis of a perceived error of state law"). While Petitioner does invoke the ex post facto and due process clauses of the federal constitution (see Pet., 8-9), the Court will not address them in Ground One for two reasons. First, Petitioner more fully raises these federal claims in Grounds Two and Three *infra*. Secondly, Petitioner

specified that this Ground only challenges State law.  Thus, because Petitioner only alleges errors of State law, he is not entitled to habeas relief on Ground One of the petition.

Ground Two

Petitioner claims that his indeterminate commitment violates federal due process because the statute "improperly places the burden of proof on the petitioner to prove" that he is no longer a danger to himself or others, and because "there is no provision for automatic and periodic hearings to determine the propriety of continued commitment." (Pet., 10.) Respondent contends that there is no clearly established federal law prohibiting a burden of proof from being placed on a civil committee nor is there clearly established federal law requiring automatic and periodic hearings to determine the propriety of continued confinement.  This Court must determine whether the appellate court's opinion was an unreasonable application of federal due process principles as set forth by the U.S. Supreme Court.

The U.S. Supreme Court has consistently upheld the states' "'forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety.'" Kansas v. Crane, 534 U.S. 407, 409 (2002) (quoting Kansas v. Hendricks, 521 U.S. 346, 357 (1997)). Such state civil commitment statutes comport with the notions of federal due process when (1) "'the confinement takes place pursuant to proper procedures and evidentiary standards,' and (2) there is a finding of 'dangerousness either to one's self or to others,' and (3) proof of dangerousness is 'coupled. . . . with the proof of some additional factor, such as 'mental illness' or 'mental abnormality.'" Crane, 534 U.S. at 409-10 (quoting Hendricks, 521 U.S at 357-58). While the 'mental illness' or 'mental abnormality' need not cause one to suffer a total "lack of control" over one's behavior, a finding of "serious difficulty in controlling behavior," Crane, 534 U.S. at 413, is necessary in order to distinguish "a dangerous sexual offender subject to civil commitment 'from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings,'" Crane, 534 U.S. at 412 (quoting Hendricks, 521 U.S. at 360); Rose v. Mayberg, 454 F.3d 958, 962 (9th Cir. 2006). The Supreme Court declined to narrowly define the phrase "lack of control" but provided the following guidance:

It is enough to say that there must be proof of serious difficulty in controlling

> behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

Crane, 534 U.S. at 413 (citing Hendricks, 521 U.S. at 357-358; Foucha v. Louisiana, 504 U.S. 71, 82-83 (1992)).

In relevant part, the SVPA provides a committed person with the three distinct methods of periodic review. The first method involves mandatory examinations of a committee's mental condition made at least once every year to include a determination of "whether the committed person currently meets the definition of a[n] [SVP] and whether conditional release to a less restrictive alternative or an unconditional release is in the best interest of the person and conditions can be imposed that would adequately protect the community." Cal. Welf. & Inst. Code § 6605(a). The examination report must then be filed in the committing court, in the form of a declaration and served on the prosecuting agency that was involved in the initial commitment proceedings. Id. If, upon examination, the DMH determines that either: (1) the person no longer meets the definition of an SVP, "or (2) conditional release to a less restrictive alternative is in the best interest of the person. . . . the director shall authorize the person to petition the court for" release. Cal. Welf. & Inst. Code § 6605(b). The second method of review pursuant to the SVPA provides that, in the event that the DMH has reason to believe that a person committed as an SVP no longer falls within that definition, "it shall seek judicial review" of the propriety of the person's commitment. Cal. Welf. & Inst. Code § 6605(f). Finally, the third method of review permits the committed person to petition the court for release on his or her own behalf. Cal. Welf. & Inst. Code § 6608.

Upon receipt of a petition for release, the court "shall order a show cause hearing at which the court can consider the petition and any" other evidence provided by the petitioner, medical director, or prosecutor to determine whether probable cause exists to grant the requested relief. Cal. Welf. & Inst. Code § 6605(b), (c). If the court finds probable cause, then the court shall set a hearing on the issue which shall afford the petitioner "all the constitutional protections that were afforded to him or her at the initial commitment proceeding" including right to counsel, right to jury trial, right to be evaluated by experts on the petitioner's behalf, and right to only be found unsuitable for release

under the strict statutory "beyond a reasonable doubt" standard of proof. Cal.Welf. & Inst. Code. § 6605(c), (d).

*Burden of Proof*

Petitioner argues that the SVPA violates federal due process by placing the burden on petitioner to show probable cause at the show cause hearing that he no longer fits the definition of an SVP and should be released. The State appellate court rejected this argument by adopting its reasoning as set forth in People v. Garcia, 81 Cal. Rptr.3d 780, 787 (2008) (*review granted*, 196 P.3d 215 (Cal. Oct. 16, 2008) (No. S166682). (Pet., Ex. B, Opinion of Cal. Ct. App., 6, Aug. 12, 2008; Doc. #1, 41.) Because the State court adopted the reasoning in Garcia, this Court will look to that case to determine whether the State court in this case engaged in an objectively unreasonable application of clearly established Supreme Court law.

In Garcia, the State court conducted an examination of the Kansas civil commitment statute, which Hendricks held did not violate federal due process, and found that the SVPA was similarly not unconstitutional. Garcia, 81 Cal. Rptr. 3d at 787. Hendricks explained that, under the Kansas statute:

> Once committed, the offender is "afforded three different avenues of review: First, the committing court [is] obligated to conduct an annual review to determine whether continued detention [is] warranted. (§ 59-29a08.) Second, the Secretary [of Social and Rehabilitation Services [is] permitted, at any time, to decide that the confined individual's condition [has] so changed that release [is] appropriate, and [can] then authorize the person to petition for release. (§ 59-29a10.) Finally, even without the Secretary's permission, the confined person [can] at any time file a release petition. (§ 59-29a11.) If the court [finds] that the State can no longer satisfy its burden under the initial commitment standard, the individual [will] be freed from confinement.

Hendricks, 521 U.S. at 353. The Garcia court found that the SVPA was nearly identical to the Kansas act in that, under each act the committed individual is committed indefinitely and both acts provide for annual review of the individual's mental condition, review by the court upon the recommendation of the supervising agency, and review by the court upon the petition of the committed individual. Garcia, 81 Cal. Rptr. 3d at 787. The Garcia court held that, "like the Kansas Act, the SVPA would appear to comply with Garcia's right to due process." Id. The Garcia court went on to note that it was "not aware of any authority that suggests that placing the burden of proof

on an individual who files an action somehow violates that individual's right to due process," and held that, because the State has the burden of proof "beyond a reasonable doubt" at both the commitment hearing and any release hearing, the procedures set forth by the SVPA "clearly meet constitutional standards." Id. at 787-788.  The Court agrees that the procedures in place conform with the due process requirements set forth above and that there is no clearly established Supreme Court law that forbids the State from placing some burden of proof on a committed individual in order to effectuate his or her release.

Addington v. Texas, 441 U.S. 418, 427 (1979), which addresses a wider scope of civil commitments than solely SVPs, holds "the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence."  Petitioner relies on this excerpt from Addington in arguing that, once it has proved its case beyond a reasonable doubt at the commitment hearing, "the government need not prove anything to justify a continued detention." (Pet., 13.)  This argument is not congruous with the holdings of Addingion.  The standard of proof discussed in Addington was the standard to be employed at a commitment hearing; subsequent review hearings were not discussed.  Furthermore, that court found that, while the government needed to prove more than a mere preponderance of the evidence at the commitment hearing, a standard of proof "beyond a reasonable doubt" was not constitutionally required.  Id. at 432.  Therefore, it follows that under the Addington standard, the SVPA has actually gone above and beyond constitutional due process requirements in holding the State to the highest standard of proof, not only at the commitment hearing but at subsequent review hearings as well.

Accordingly, the Court does not find the State appellate court's determination to be objectively unreasonable under the due process standards set forth in Addington, Hendricks, and Crane.

*Automatic and Periodic Hearings*

Petitioner claims that because the SVPA does not require periodic hearings it "creates an unacceptable risk" such that his commitment will continue in violation of due process as the government no longer needs to prove Petitioner's need for continued detention.  (Pet., 14.)

1    Again, the appellate court relied on its rejection of an analogous claim in Garcia.  (Pet., Ex.
2 B, Opinion of Cal. Ct. App., 7, Aug. 12, 2008; Doc. #1, 42.)  Garcia rejected this argument holding
3 that the annual review process provided for in the SVPA was constitutionally sufficient to satisfy due
4 process.  Garcia, 81 Cal. Rptr. 3d at 789 (citing Cal. Welf. & Inst. Code §6605(a), (b)).  The Court
5 does not find that the State court's decision was objectively unreasonable in light of clearly
6 established federal law.
7    Notably, section 6605(a) requires that a report of the annual examination of a committed
8 individual's mental condition be filed with the committing court in the form of a declaration.  While
9 this Court does not equate the filing of a yearly mental examination to annual review by the court,
10 the Court is not aware of, and Petitioner fails to provide, any federal authority that requires yearly
11 judicial review.  Due Process requires that "the conditions and duration of confinement under [a civil
12 commitment statute] bear some reasonable relation to the purpose for which persons are committed."
13 Seling v. Young, 531 U.S. 250, 265 (2001) (citing *e.g.* Foucha, 504 U.S. at 79).  Petitioner was
14 initially committed because he fell within the definition of an SVP and was considered a danger to
15 himself and others.  The duration of his confinement is reasonably related to California's interest in
16 keeping Petitioner incapacitated until such time as he no longer poses such a danger.  See Hendricks,
17 521 U.S. at 363.  The SVPA balances California's interest in safety with the committed individual's
18 liberty interest by mandating yearly mental examinations which protect against the possibility that a
19 civil committee might remain indefinitely detained even after that person is no longer dangerous.
20    Accordingly, the State court's reliance on Garcia, holding that the review standards set forth
21 by the SVPA are sufficient to satisfy due process, does not constitute an unreasonable application of
22 clearly established federal due process law.
23 Grounds Three and Four
24    Petitioner claims that his indeterminate commitment violates the ex post facto clause and the
25 Fifth Amendment's double jeopardy clause.
26    Whether a confinement scheme is punitive is the threshold question for issues of both ex post
27 facto and double jeopardy violations.  Young, 531 U.S. at 266 (citing Hendricks, 521 U.S. at 360).
28 "The categorization of a particular proceeding as civil or criminal 'is first of all a question of

statutory construction.'" Hendricks, 521, U.S. at 361 (quoting Allen v. Illinois, 478 U.S. 364, 368 (1986)). Although a civil label is not necessarily dispositive, the Supreme Court will only "reject the legislature's manifest intent. . . . where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" Hendricks, 521, U.S. at 361 (quoting United States v. Ward, 448 U.S. 242, 248-49 (1980)). Only when the challenging party can meet this heavy burden will the Court "consider the statue to have established criminal proceedings for constitutional purposes." Id.

Petitioner claims that even thought the SVPA is part of the Welfare and Institutions Code, the 2006 amendments brought about by Proposition 83 made the act punitive in nature because it increased punishment for sex offenders and allowed for indefinite commitment of SVPs.

The State appellate court once again adopted its reasoning used in rejecting analogous claims in Garcia. (Pet., Ex. B, Opinion of Cal. Ct. App., 7-9, Aug. 12, 2008; Doc. #1, 42-44.) Garcia began by addressing the argument that Proposition 83 addressed punishment and was therefore a punitive bill, the passage of which made the laws it amended punitive as well. The court rejected the petitioner's argument finding that the mere fact that the proposition changed the punishment for certain offenses did not make the sections of the proposition that amended civil commitment procedures punitive. Garcia, 81 Cal. Rptr. 3d at 790.

The court went on to address "[t]he heart of [petitioner]'s argument," that indefinite commitment is punitive in nature. Id. The court noted that the Kansas statute at issue in Hendricks also allows for indefinite commitment and was found by the Supreme Court to be civil. Id. Like the Kansas statute, the SVPA allows for potentially indefinite commitment but requires yearly review of an individual's mental condition so that an individual's commitment does not outlast his dangerousness. Id. 790-791. Petitioner tries to distinguish Hendricks by claiming that the Kansas statute does not allow for indefinite commitment in that it requires annual review by the trial court, thus "the maximum time an individual can be incapacitated pursuant to a single judicial proceeding [is] one year." (Pet., 15.) The Garcia court noted this slight difference between the two statutes, that Kansas statute requires yearly review by the court while the SVPA requires yearly examinations to be conducted by DMH, but found the difference to be inconsequential because both types of review

U.S. District Court
E. D. California

11

are conducted with the purpose of determining whether the committed individual's mental condition continues to fall within the definition of a SVP. Id. at 791.

After considering the similarities between the SVPA and the Kansas statute and finding the analysis in Hendricks to be on point with the instant case, the Court does not find the State appellate court's holding that the SVPA remains a civil statute to be objectively unreasonable. As the SVPA is a civil statute, it does not raise issues of ex post facto or double jeopardy, thus, Petitioner's habeas claims in Grounds Three and Four must be rejected.

Ground Five

Petitioner claims that his indeterminate commitment violates the Fourteenth Amendment's equal protection clause because he is being treated differently than the similarly situated groups of "mentally disordered offenders" and "persons who have been found guilty by reason of insanity." (Pet., 20.)

"[W]here a group possesses 'distinguishing characteristics relevant to interests the State has the authority to implement,' a State's decision to act on the basis of those differences does not give rise to a constitutional violation," Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 367 (2001) (quoting Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 441 (1985)), so long as there is a "'rational relationship between the disparity of treatment and some legitimate governmental purpose,'" Id. (quoting Heller v. Doe, 509 U.S. 312, 320 (1993)). Once such legislation has been enacted,

> [T]he Fourteenth Amendment "requires that all persons subject to . . . legislation shall be treated alike under like circumstances and conditions, both in privileges conferred and in the liabilities imposed." (Citation omitted) When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances and conditions." Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a "rational basis for the difference in treatment." (Citation omitted.)

Engquist v. Or. Dept. of Agr., 553 U.S. 591, 128 S.Ct. 2146, 2152 (2008).

Adopting its reasoning set forth in Garcia, the State court found that SVPs are not similarly situated to other mentally disordered offenders and persons found guilty by reason of insanity in part

because the "amended SVPA is directed at a very narrow group of individuals." While the court did not cite any federal precedent in discussing this issue, its holding is not unreasonable in light of clearly established federal law. The distinguishing characteristic of the SVP group is its unique danger to society and enacting a law that provides for the civil commitment of members of that group is rationally related to the State's interest in safety. Under federal standards, other mentally disordered offenders and persons found guilty by reason of insanity are not similarly situated under the legislation in question because they are not in fact detained under the SVPA.

Accordingly, Petitioner cannot be granted habeas relief as to Ground Five.

Ground Six

Petitioner claims that his indeterminate commitment is cruel and unusual punishment as prohibited by the Eighth Amendment. (Pet., 21.)

"The type of conduct about which the drafters of the Eighth Amendment were primarily concerned included 'tortures and other barbarous methods of punishment.'" Davidson v. Cannon, 474 U.S. 344, 355 n.3 (1986) (Blackmun, H., dissenting) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)); See Baze v. Rees, 553 U.S. 35, 99 (2008).

The State court adopted its reasoning in Garcia in finding that an individual committed under the SVPA is not a prisoner and is not being punished. (Pet., Ex. B, Opinion of Cal. Ct. App., 10, Aug. 12, 2008; Doc. #1, 45.) See Garcia, 81 Cal. Rptr. 3d at 1136. Following the reasoning discussed above in Grounds Three and Four, the Court finds that the State court did not unreasonably apply clearly established federal law in holding that the SVPA is not punitive; therefore, Petitioner cannot receive relief on this Ground.

Ground Seven

Petitioner claims that his indeterminate commitment violates his First Amendment right to petition the court for redress of grievances in that, according to Petitioner, "a detainee may file a petition for release only with the concurrence of the director of the [DMH]." (Pet., 25.)

"The right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." Woodford v. Ngo, 548, U.S. 81, 122 (2006) (quoting Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983)).

The State court, adopting its reasoning from Garcia, (Pet., Ex. B, Opinion of Cal. Ct. App., 11, Aug. 12, 2008; Doc. #1, 46.) noted that section 6608 of the SVPA allows a committed individual to "petition the trial court for release without anyone's consent." Garcia, 81 Cal. Rptr. 3d at 1137. Furthermore, a committed individual who petitions the trial court is entitled to counsel and "not prohibited from the use of expert witnesses." Id. In short, the State court held that, not only can a petitioner petition the government for his release, he or she is afforded all of the protections required by constitutional due process during the proceedings.

The State court's finding that the SVPA does not prevent Petitioner from petitioning the government for redress of grievances is not objectively unreasonable under clearly established federal law and thus, Petitioner cannot be granted habeas relief on this Ground.

Ground Eight

Petitioner claims that Proposition 83 violated the single-subject rule applicable to California Ballot Measures.

The single-subject rule is set forth in Article II, section 8, subdivision (d) of the California Constitution. Garcia, 81 Cal. Rptr. 3d at 1137. As discussed in Ground One, a claim that rests purely in State law is not cognizable under federal habeas law. As the single-subject law is a construct of the State of California, this claim is not cognizable for review.

## CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus should be denied in full.

## CERTIFICATE OF APPEALABILITY

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 336-37 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the

validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

   (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

      (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

      (B) the final order in a proceeding under section 2255.

   (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

   (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 322 U.S. at 338 (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Id.

In the present case, the Court finds that Petitioner has not made the required showing, thus, a certificate of appealabilty should not be issued.

## RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that:

1) the petition for a writ of habeas corpus be DENIED;

2) the Clerk of Court be DIRECTED to enter judgment; and

3) certificate of appealability be DENIED.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be served and filed within ten

1  days after service of the objections.  The parties are advised that failure to file objections within the
2  specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d
3  1153 (9th Cir. 1991).

5  IT IS SO ORDERED.

6  **Dated:   May 11, 2010**               /s/ John M. Dixon
                                    UNITED STATES MAGISTRATE JUDGE